NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 04-4195

HIGHWAY MATERIALS, INC,

Appellant

v.

WHITEMARSH TOWNSHIP, MONTGOMERY COUNTY, PA; THE BOARD
OF SUPERVISORS OF WHITEMARSH, TOWNSHIP, MONTGOMERY
COUNTY, PA; ANN D. YOUNGLOVE, INDIVIDUALLY AND IN HER
CAPACITY AS CHAIRMAN OF THE BOARD OF SUPERVISORS;
RONALD J. DEROSA, INDIVIDUALLY AND IN HIS CAPACITY AS
SUPERVISOR; WILLIAM P. RIMEL, III, INDIVIDUALLY AND IN
HIS CAPACITY AS SUPERVISOR; PETER B. CORNOG, INDIVIDUALLY
AND IN HIS CAPACITY AS SUPERVISOR; MICHAEL A. ZEOCK,
INDIVIDUALLY AND IN HIS CAPACITY AS SUPERVISOR; THOMAS F.
ZARKO, INDIVIDUALLY AND IN HIS CAPACITY AS TOWNSHIP ENGINEER;

DONALD COHAN; TRINA COHAN; PAUL
HENKELS; BARBARA HENKELS

(Intervenors in District Court)

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 02-cv-03212)
District Judge: Honorable Robert F. Kelly

Submitted Under Third Circuit LAR 34.1(a)
June 3, 2010

Before: AMBRO, CHAGARES, and VAN ANTWERPEN, <u>Circuit Judges</u>

(Opinion filed:  July 7, 2010)

_____

OPINION

_____

AMBRO, <u>Circuit Judge</u>

Highway Materials, Inc. ("HMI") appeals the District Court's grant of defendants'
motion for summary judgment on HMI's substantive due process and equal protection
claims.[1]  HMI argues that the District Court erred by: 1) failing to consider all the facts on
the record, as well as reasonable inferences in HMI's favor, in applying the "shocks the
conscience" standard to HMI's substantive due process claim; and 2) finding that HMI
had not shown that defendants' behavior lacked any rational basis as needed to sustain its
equal protection claim.  For the reasons that follow, we disagree and thus affirm.

## I.  Factual and Procedural History

HMI purchased what was known as the Corson Limestone Quarry in 1997.  The
property comprises 309 acres over three parcels of land in Whitemarsh Township,
Montgomery County, Pennsylvania (the "Township").  The subject of this land use
dispute is a 54 acre parcel termed "Parcel One."  Until late 2001, the majority of this land
was zoned HVY-X Industrial, with a small section zoned for residential use.  The HVY-X
zone permitted office development, among other uses, but prohibited residential

_____

[1] Defendants include Whitemarsh Township, the Whitemarsh Township Board of
Supervisors, individual members of the Board, and Thomas Zarko (the Township
engineer).

2

development. Nearly all of the land in the area around HMI's property is zoned for residential use, with the exception of a 15 acre parcel adjacent to HMI's land zoned HVY-X, owned by KYW (a local radio broadcaster), upon which sits a radio transmitting tower and a small building.

The current dispute arose from HMI's efforts to develop Parcel One. Near the end of November 2000, HMI submitted a sketch plan proposing a mixed-use development that included 450,000 square feet of office space and 600 apartment units. This plan required that the Township re-zone the property to permit the residential development prohibited in an HVY-X zone.[2] The Montgomery County Planning Commission, in a January 29, 2001, meeting, determined that the proposal was too dense relative to the surrounding area.[3] The Whitemarsh Township Planning Commission (the "Whitemarsh Planning Commission") then convened on February 21, 2001, at a meeting open to the public.[4] Many attendees, from both the general public and the Whitemarsh Planning Commission, were similarly critical of the proposal. In May 2001, HMI presented the proposal to the Board of Supervisors of Whitemarsh Township (the "Board") at an open

---

[2] HMI alternately could have sought a variance from the Township's Zoning Hearing Board.

[3] The Montgomery County Planning Commission acts in an advisory role for the Township, which has the power to approve or reject development proposals within its jurisdiction.

[4] The Whitemarsh Planning Commission acts in an advisory role for the Board (defined below in text), which ultimately decides land use requests and proposals for the Township.

meeting. Many nearby residents, identifying themselves as members of the Whitemarsh Township Residents Association (the "Residents Association"), attended this meeting. They spoke against the proposal, and voiced a general opposition to further development in the Township. The parties do not dispute that the proposed development would have led to traffic and congestion problems in the area.

Noting the Township's resistance to re-zoning to accommodate its mixed use proposal, HMI set out to develop the land in accordance with HVY-X regulations. Meanwhile, in July 2001 one resident, Donald Cohan, on behalf of a substantial number of co-signing residents, submitted a private re-zoning petition in accordance with Whitemarsh's zoning regulations. The petition sought to re-zone HMI's property (previously zoned HVY-X) to EX-Extraction, which would limit acceptable development to single family residences on individual lots of at least one acre. On September 10, 2001, before any action was taken on this proposal, HMI submitted a preliminary plan for the development of Parcel One that included 500,000 square feet of office space, as allowed in an HVY-X zone. The Whitemarsh Subdivision Land Development Ordinance (the "Land Development Ordinance") requires that a proposal be evaluated under the relevant guidelines in place when it is submitted, such that the Township had to consider HMI's proposal under HVY-X regulations.

On October 18, 2001, the Board voted to re-zone HMI's property to EX-Extraction, as proposed in the private petition. HMI successfully challenged this re-zoning as procedurally defective, and the Board re-enacted the change on February 28,

4

2002. HMI alleges that this re-zoning was merely the first step in the Township's scheme to prevent it from developing its property.

The Township was required to act, via a Board vote, on HMI's proposal within 90 days of the first Whitemarsh Planning Commission meeting after the filing of the plans, or else it would be deemed approved. HMI offered the Township routine extensions of this deadline, such that it was not a factor. HMI alleges that, from the time it first submitted its proposal, the Board's behavior displayed intransigence and a clear effort to deny HMI the opportunity to develop Parcel One. The Township distributed the plan to its engineer, Thomas Zarko, for review. Two letters from Zarko in October 2001 detailed the deficiencies of HMI's proposal relative to the requirements specified in the Land Development Ordinance and other Township ordinances. HMI alleges that these objections were trivial and misinterpretations of the ordinances. The Montgomery County Planning Commission, in a November 20, 2001, letter to the Township, found the proposal to be too dense and to propose too intense a use to be compatible with the surrounding area.

HMI also states that throughout November 2001 it made multiple, but fruitless, attempts to meet with Township officials to discuss the proposal and the deficiencies that Zarko had specified. Without further guidance from the Township, HMI submitted a revised preliminary plan on December 21, 2001. Zarko reviewed this plan and found there remained significant non-compliance with Township ordinances. HMI argues that these deficiencies resulted from its inability to engage officials in a dialogue to determine

5

how to remedy the proposal's inadequacies. It further contends that this silence was part of an overt effort to prevent it from developing Parcel One. HMI supplements this claim with reference to a February 4, 2002, letter from attorney Marc Kaplin (whose firm represented Cohan and the Residents Association) to Township Solicitor Ross Weiss, relating Kaplin's research into landowners' rights to submit revised plans after a zoning change without subjecting the plans to review under the new zoning designation.

Township officials alerted HMI that the Board planned to discuss HMI's mixed-use proposal at a public meeting on March 12, 2002, and requested that HMI submit a plan. At this meeting, HMI outlined what it described as a less intense proposal calling for 308,000 square feet of office space (in four three-story buildings) and 380 apartments (in ten four-story buildings). Area residents, as well as members of the Board, remained staunchly opposed to development, citing concerns about traffic, drainage, and conformity with the surrounding area.

The next day, the Township Manager notified HMI that the Whitemarsh Planning Commission would review the revised preliminary plan for HMI's all-office building proposal at its meeting on March 19, 2002, and that the Board would then vote on the proposal at its meeting on March 21. These meetings were the last scheduled before the 90-day period for action expired. HMI responded with an offer of an extension in a March 12 letter, but the Board refused.

Before the March 19 Whitemarsh Planning Commission meeting, HMI submitted a second revised plan for its all-office building proposal that it claimed addressed the

majority of the deficiencies that Zarko had specified. According to the Township's Land Development Ordinance, this revision automatically started a new 90-day period for the Board to act. Although Zarko could not review the second revised plan before the Whitemarsh Planning Commission meeting, the meeting went ahead, with many residents voicing strong objections to the proposal. Kaplin alerted the community members that his research indicated that the Board was within its rights to act on the proposal immediately, and could reject it. The Whitemarsh Planning Commission voted to recommend that the Board reject HMI's proposal.

Before the March 21 Board meeting, Zarko submitted his report reviewing the second revised plan. HMI received this report approximately two hours before the Board meeting. Zarko identified the deficiencies in this plan, many of which had already been specified in his reviews of the prior submissions. These deficiencies included, among others, a lack of specificity concerning the proposed sewage treatment plant, and the lack of a berm and chain link fence around the perimeter of the proposed construction. HMI alleges that Weiss gave Zarko specific instructions to alter the order of items in his report so that it differed from his report issued on January 24, 2002.

At the Board meeting on March 21, Weiss had a court reporter document the proceedings and had Township witnesses sworn. HMI's attorney James Garrity reiterated HMI's request for an extension before the Board's vote. The Board denied this request and rejected the proposal. At depositions, Board members cited the lack of progress in the plan as indicating that an extension would not lead to an improvement in the proposal.

7

They also noted Zarko's report specifying areas of the proposal not in compliance with Township ordinances as reasons for denying the plan. HMI alleges that this Board meeting was simply the final charade in the Township's effort to deny HMI its development rights. With the denial of the plan, all future proposals would be treated as new plans (and thus reviewed under the amended zoning ordinance enacted in February 2002).

On April 19, 2002, HMI filed a Notice of Appeal from the Board's decision in the Montgomery County Court of Common Pleas. The case was assigned to Judge Albright, who remanded the matter to the Board to conduct a "good faith" review of HMI's proposal as required under Pennsylvania law, principally in light of *Raum v. Board of Supervisors of Tredyffrin Township*, 370 A.2d 777, 798 (Pa. Commw. Ct. 1977) (requiring that a municipality, as part of a good faith review of a development proposal, "discuss[] matters involving technical requirements or ordinance interpretation with an applicant, and provid[e] an applicant a reasonable opportunity to respond to objections or to modify plans where there has been a misunderstanding or difference of opinion"). The Commonwealth Court affirmed this order on May 21, 2009. *Highway Materials, Inc. v. Bd. of Supervisors of Whitemarsh Twp.*, 974 A.2d 539 (Pa. Commw. Ct. 2009).

Three days later, HMI filed the suit generating the appeal before us in the United States District Court for the Eastern District of Pennsylvania. HMI alleged, pursuant to 42 U.S.C. §1983, that the defendants violated its procedural and substantive due process

8

rights, and denied it equal protection of the law.[5] The District Court granted defendants' motion for summary judgment on all three claims. It found that there was no material fact in dispute that could lead a reasonable juror to conclude that defendants' behavior "shocked the conscience" (necessary to the substantive due process claim) or was "wholly arbitrary and irrational" (for the equal protection claim). HMI timely appealed. The District Court had subject matter jurisdiction under 28 U.S.C. §1331. We have appellate jurisdiction under 28 U.S.C. §1291.

## II. Discussion

### A. Standard of Review

We exercise plenary review over the District Court's grant of summary judgment. *Lawrence v. City of Philadelphia*, 527 F.3d 299, 310 (3d Cir. 2008). All evidence must be viewed in the light most favorable to HMI and all reasonable inferences drawn in its favor. *Id.* Summary judgment is appropriate when "there is no genuine issue as to any material fact [such] that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). The District Court's grant of summary judgment will be affirmed if, in light of the facts and reasonable inferences drawn in HMI's favor, no reasonable juror could find in their favor. *Lawrence*, 527 F.3d at 310.

### B. Substantive Due Process

To prevail on its claim that defendants violated its substantive due process rights, HMI must prove that defendants' behavior "shocks the conscience." *Eichenlaub v. Twp.*

---

[5] HMI does not pursue its procedural due process claim on appeal.

9

*of Indiana*, 385 F.3d 274, 285 (3d Cir. 2004); *United Artists Theatre Circuit, Inc. v. Twp. of Warrington*, 316 F.3d 392, 402 (3d Cir. 2003). "[T]his test is designed to avoid converting federal courts into super zoning tribunals." *Eichenlaub*, 385 F.3d at 285. "[O]nly the most egregious official conduct" qualifies. *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998). Moreover, "[l]and-use decisions are matters of local concern." *United Artists*, 316 F.3d at 402; *see also Clark v. Boscher*, 514 F.3d 107, 113 (1st Cir. 2008) ("In the vast majority of instances, local and state agencies and courts are closer to the situation and better equipped to provide relief." (citation omitted)).

In support of its claim that defendants' behavior "shocked the conscience," HMI cites the Commonwealth Court's holding that defendants willfully and intentionally violated their duty under Pennsylvania law to process HMI's development application in "good faith." *Highway Materials*, 974 A.2d at 544–45. To this state court decision, HMI adds specific reference to Solicitor Weiss's statement that "[t]he township is not going to work with you and help you on a controversial development for such a large piece of property" as evidence that the Township officials refused to communicate with HMI and rejected "repeated requests to discuss and resolve those objections." Finally, HMI alleges that the deficiencies Zarko identified with its proposal, and that the Board gave as reasons for rejecting the application, were "spurious."

Even if defendants acted exactly as HMI claims, it would not amount to behavior that "shocks the conscience." As in *Eichenlaub*, the Township's alleged behavior in this case "does not rise sufficiently above that at issue in a normal zoning dispute to pass the

10

'shocks the conscience test.'" 385 F.3d at 286. Even if the purported deficiencies in its proposal were "spurious," and the Township intentionally refused to cooperate with HMI, the most that can be proven is a bad-faith violation of state law, which does not meet the standard. *See United Artists*, 316 F.3d at 402. "[T]here is no allegation of corruption or self-dealing here." *Eichenlaub*, 385 F.3d at 286 (explaining corruption as "hamper[ing] development in order to interfere with otherwise constitutionally protected activity at the project site, or because of some bias against an ethnic group"). Further, any claim brought by a developer to appeal an "adverse ruling of the local planning board involves some claim of abuse of legal authority." *United Artists*, 316 F.3d at 402. In the end, these allegations do not state a constitutional claim under § 1983. *Id*.

This decision fits with those of our sister circuit courts applying the "shocks the conscience" test. *See Tri-County Paving, Inc. v. Ashe County*, 281 F.3d 430, 441 (4th Cir. 2002) ("[T]he fact that state courts are available to redress and correct violations of state law belies the existence of a substantive due process claim." (quotation omitted)); *Chesterfield Dev. Corp. v. City of Chesterfield*, 963 F.2d 1102, 1105 (8th Cir. 1992) ("A bad-faith violation of state law remains only a violation of state law."); *PFZ Props. v. Rodriguez*, 928 F.2d 28, 32 (1st Cir. 1991) ("[A] mere bad faith refusal to follow state law in such local administrative matters does not amount to a deprivation of due process . . . .").

The Township's actions are no more egregious than those of the defendants in these other land dispute cases, none of which was held to "shock the conscience." In

11

*Eichenlaub*, the allegations included overly strict application of ordinances relative to other developers, delays in issuing permits and approvals, unannounced inspections, and improper tax assessments. 385 F.3d at 286. *Chesterfield* involved the defendant city enforcing "an invalid zoning plan and ordinance" against a developer. 963 F.2d at 1103. In *PFZ*, allegations of "delaying tactics and refus[ing] to issue permits . . . based on considerations outside the scope of [the Puerto Rico Regulations and Permits Authority's] jurisdiction" did not shock the conscience enough to prevail on an appeal of a Rule 12(b)(6) motion to dismiss the substantive due process claim. 928 F.2d at 32. "[T]he revocation of building permits, the unauthorized issuance of enforcement orders, and the delays in the processing and approval of [a developer's] application for an amended permit," do not shock the conscience. *Licari v. Ferruzzi*, 22 F.3d 344, 349–50 (1st Cir. 1994). More recently, the First Circuit Court held that a city's denial of building permits "in furtherance of its own interests" does not shock the conscience. *Clark*, 514 F.3d at 113.

HMI claims that defendants intentionally refused to cooperate with it, improperly applied Township ordinances, treated it differently from nearby owners,[6] and actively sought reasons to deny it the opportunity to develop its land. Looking at the totality of the facts on the record, and the reasonable inferences that can be drawn therefrom in HMI's favor, defendants' actions, crystalizing in the re-zoning of HMI's property and

---

[6] HMI substantiates its claim with reference to the KYW-owned land, which was not re-zoned from its HVY-X designation.

subsequent denial of HMI's preliminary proposal, simply do not shock the conscience. If defendants intentionally misapplied the ordinances and disregarded their duty under Pennsylvania law to conduct a good-faith evaluation of HMI's proposal, that "remains only a violation of state law." *United Artists*, 316 F.3d at 402 (*quoting Chesterfield*, 963 F.2d at 1105); *see also PFZ*, 928 F.2d at 32.

Finally, HMI has failed to demonstrate that the Board's re-zoning of HMI's property and denying its proposal were unrelated to any legitimate government interest. Activities of the Board that do not "transgress the 'outer limit' of legitimate governmental action . . . do not give rise to a federal substantive due process claim." *Harlen Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494, 505 (2d Cir. 2001); *see also Lewis*, 523 U.S. at 849 ("[C]onduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level."). Although HMI introduced evidence supporting its claim that defendants intentionally subverted its attempts to develop Parcel One, it was uncontested that HMI's proposal would significantly increase traffic in the Township. Such considerations are legitimate concerns of local governments.

As HMI failed to demonstrate any disputed fact that could lead a reasonable juror to find that defendants' actions "shocked the conscience," the District Court properly granted defendants' motion for summary judgment on HMI's substantive due process claim.

C.    **Equal Protection**

13

When "determining the validity of state legislation or other official action that is challenged as denying equal protection[,] [t]he general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985). Although an exception arises when a statute differentially treats individuals based on a protected classification (*e.g.*, race, alienage, or national origin), *id.*, HMI bases its equal protection claim on a "class of one" theory. *See Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam) (allowing individuals to bring equal protection claims, not as members of a protected class, to guard against "intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents").

A successful "class of one" claim has two prongs: a plaintiff must demonstrate both that 1) it "has been intentionally treated differently from others similarly situated," and 2) "there is no rational basis for the difference in treatment." *Id.* The second prong in particular imposes a high burden, requiring "different treatment [that] is 'irrational and wholly arbitrary.'" *Eichenlaub*, 385 F.3d at 286 (*quoting Vill. of Willowbrook*, 528 U.S. at 564). These challenges fail when "there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Heller v. Doe*, 509 U.S. 312, 320 (1993). Additionally, we have explained that "we do not view an equal protection claim as a device to dilute the stringent requirements needed to show a substantive due process violation." *Eichenlaub*, 385 F.3d at 287.

14

For the first prong, requiring a showing that it was treated differently from other similarly situated landowners, HMI points to the KYW parcel adjacent to its property, which was also zoned HVY-X, but was not re-zoned along with HMI's land. Assuming that HMI and KYW are similarly situated, HMI fails on the second prong. HMI argues that its different treatment undermines the Township's claim that it re-zoned HMI's property to bring it into conformity with the surrounding area.

This allegation does not demonstrate that the Township's actions were "wholly arbitrary." *Eichenlaub*, 385 F.3d at 286. Local governments can re-zone land as part of a determination as to "how much industrial development is in the best interest of the Township and how that quantum of industrial development should be achieved." *Pace Res., Inc. v. Shrewsbury Twp.*, 808 F.2d 1023, 1035 (3d Cir. 1987). HMI's contention that the Township re-zoned HMI's land without any input from land use experts does not change the matter. Land use experts may offer helpful assistance, but they are not mandatory. HMI's evidence merely identifies a dispute regarding the merits of the Township's choice, not whether there was a rational basis for re-zoning HMI's land.

Further, although HMI has introduced evidence that the Township intentionally refused to work with HMI, it failed to demonstrate that the Township had "no rational basis" for denying HMI's proposal. *Vill. of Willowbrook*, 528 U.S. at 564. As noted above, the Township had a number of valid reasons for denying the proposal, including the deficiencies relative to Township ordinances that Zarko identified, concerns about the increased traffic burden that the proposed development would produce, and concerns

15

about how the project would conform with the surrounding area. HMI alleges that these reasons should be viewed as "mere pretext" for the Township's alleged goal of "block[ing] HMI's vested right to develop" its property. The parties, however, do not dispute that HMI's proposal would increase the traffic burden in the surrounding area. Also, Zarko reported to the Board that HMI's proposal did not comply with Township ordinances. Even if the ordinances were incorrectly interpreted, deficiencies in the proposal provided a rational basis for denying it. HMI perhaps has demonstrated a dispute as to whether the ordinances were correctly applied, but such a dispute is not material to HMI's equal protection claim, for which HMI must show that the Board had no rational basis for denying HMI's proposal.

HMI has not carried its burden of demonstrating that defendants' actions were "irrational and wholly arbitrary." *Eichenlaub*, 385 F.3d at 286. Therefore, its equal protection claim does not raise a disputed issue of material fact that could lead a reasonable juror to find that HMI was denied equal protection under the law. The District Court properly granted defendants' motion for summary judgment on HMI's equal protection claim.

*     *     *     *     *

In this context, we affirm the District Court's decision.

16