NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 08-3569
_____

LOCUST VALLEY GOLF CLUB, INC.; JAMES KUEHNER;
RICHARD M. SCHWAB; KATHLEEN SCHWAB,

Appellants

v.

UPPER SAUCON TOWNSHIP; UPPER SAUCON TOWNSHIP
BOARD OF SUPERVISORS; SUPERVISOR MIRO GUTZMIRTL;
SUPERVISOR JOSEPH HORVATH; SUPERVISOR STEVEN WAGNER,
In their Official and Individual Capacities; SUPERVISOR JAMES WHITE,
In His Official Capacity; THOMAS BEIL, Township Manager, In his Official
Capacity and Individual Capacities

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-07-cv-04305)
District Judge: Honorable Berle M. Schiller

_____

Submitted Under Third Circuit LAR 34.1(a)
on July 13, 2010

Before: FUENTES, ALDISERT and ROTH, Circuit Judges

(Opinion Filed: August 9, 2010)

_____

OPINION OF THE COURT

_____

ALDISERT, <u>Circuit Judge</u>.

The Appellants, present and former owners of golf-club property located in Upper Saucon Township, Pennsylvania, appeal from the grant of summary judgment by the District Court for the Eastern District of Pennsylvania on their claim under 42 U.S.C. § 1983 that the Appellees[1] violated their substantive due process rights under the Fourteenth Amendment. For the reasons that follow, we will affirm.[2]

I.

In August 2004, the Appellants made agreements to sell their golf-course property to the developer, McGrath Construction. At the time of those agreements, the Upper Saucon Township had in place a public sewer scheme called the "Act 537 Plan." This plan imposed a moratorium on new sewer connections in certain areas of the Township, including the site where the golf course was located.

McGrath was first interested in developing the golf course as an "Age Qualified

---

[1]The Appellees are the Upper Saucon Township; the Township's Board of Supervisors; Supervisors Miro Gutzmirtl, Joseph Horvath, Steven Wagner, and James White; and Township Manager Thomas Beil.

[2]The District Court had subject matter jurisdiction under 28 U.S.C. § 1331. This Court has appellate jurisdiction under 28 U.S.C. § 1291.

Community" ("AQC"). In June 2004, before the original sale agreements were signed, McGrath met with Township representatives to discuss possibilities for sewer services for an AQC. At the meeting, the Township's engineer suggested that McGrath's sewer needs might be met by a "pump around" option that bypassed the overloaded sewer pipelines by routing the golf course's sewage to pipelines along Gun Club Road. At McGrath's request, the Township's engineer conducted a preliminary feasibility study in August 2004. He tentatively concluded that the proposal was viable, subject to further testing.

To develop the golf course as an AQC, McGrath also needed the Board to amend the Township's zoning ordinance. McGrath proposed an amendment that would provide for an Age Qualified Community Overlay District ("AQCOD"), and would specifically approve three properties for AQC development, including the golf course. In March 2005, the Board rejected that proposal, but in June 2005, it adopted a revised ordinance authorizing an AQCOD without specifically approving any property for development. Thereafter, McGrath requested AQC designation for the golf course. The Board rejected that request at its September 27, 2005 meeting. Of the Appellees, only White and Wagner were on the Board at the time.

Before the Board rejected its first request, McGrath had already proposed a more modest development of 125 single-family homes (the "LVS" proposal). This plan would not require AQC designation, but would nevertheless require the Board to revise the Act 537 Plan to permit McGrath to use a "pump around" option. In connection with its

3

proposal, McGrath submitted a Subdivision Land Development Application, including a fully engineered sewage planning module. Thereafter, the Board commissioned the Township's engineer to conduct a Special Study to fully assess the feasibility of the "pump around" option. The Study was expected to last for three months, to be followed by a 30-day public comment period. At about this time, Appellees Gutzmirtl and Horvath[3] were elected to the Board. They began their terms in January 2006.

The Special Study began on February 28, 2006 and, after several delays, ultimately lasted until late June 2006. In July 2006, the Township's engineer ultimately concluded that the "pump around" alternative was infeasible due to the risk of "hydraulic overload" in wet conditions. Without publishing the Study for public comment, the Board accepted the Study's findings and rejected McGrath's second proposal on August 22, 2006. Since that rejection, the Appellants apparently have been unable to close on their agreed sale of the property to McGrath.

The parties dispute the extent to which the actions of Appellees Gutzmirtl, Wagner and Horvath influenced the Special Study. After the Study was commissioned, Gutzmirtl, Wagner and Horvath exchanged emails showing their opposition to McGrath's proposal. In one email, Gutzmirtl wrote that the development "must not happen." App. 466. In

_____

[3]Prior to his election to the Board, Gutzmirtl twice approached Appellant Richard Schwab with an offer to purchase the golf course. Schwab rejected Gutzmirtl both times. As Gutzmirtl walked away from Schwab after the second rejection, he allegedly muttered, "[t]his golf course will never be developed while I'm around." App. 115-116.

4

another email, Wagner wrote:

> Ahrrrrrg!!!!! This . . . study better turn out the way we would like. Even if the authority supports a 537 change for technical reasons[,] I will ignore it on the basis of ill conformance to the comprehensive plan, etc.

App. 465. The Appellants additionally charge that Gutzmirtl met with the Township's engineer and attempted to pressure him to compromise the Study. Appellant Br. 13-14. As evidence, the Appellants offer an email from Gutzmirtl to Horvath and Wagner expressing Gutzmirtl's fear that, contrary to their previous understanding, the engineer intended to do the Study "the right way." App. 458. Further, as evidence of the allegedly tainted Study, the Appellants point to delays, prolongation, and the fact that the Study was not submitted for public comment. In addition, the Appellants' expert testified that the analysis was scientifically unsound. App. 483. The Appellees, by contrast, contend that the Study was unbiased and sound. They attribute the delays to drought conditions, which did not afford the Township's engineer with sufficient rainfall data to test the "pump around" option in wet-weather conditions.

McGrath pursued a number of state-court and administrative actions, with limited success. Thereafter, the Appellants filed this lawsuit under 42 U.S.C. § 1983, alleging, inter alia, both substantive due process and equal protection violations under the Fourteenth Amendment, and state-law claims for tortious interference. On July 14, 2008, the District Court granted summary judgment against the Appellants on their federal claims and declined to exercise supplemental jurisdiction over their state law claims. On

August 20, 2008, the Appellants filed this appeal, challenging the Court's grant of summary judgment only with respect to their substantive due process claim.

## II.

We exercise plenary review over the District Court's grant of summary judgment, applying the same summary judgment standard that the District Court should have applied. Eichenlaub v. Twp. of Ind., 385 F.3d 274, 279 (3d Cir. 2004). Summary judgment is appropriate when the non-moving party has failed to produce evidence creating a genuine issue of material fact, and the moving party is entitled to summary judgment as a matter of law. Rule 56, Federal Rules of Civil Procedure. Additionally, all reasonable inferences must be drawn in favor of the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

The parties agree that "whether a zoning official's actions or inactions violate due process is determined by utilizing a 'shocks the conscience' test." Eichenlaub, 385 F.3d at 285 (citing United Artists Theatre Circuit, Inc. v. Twp. of Warrington, 316 F.3d 392, 399 (3d Cir. 2003)). Although the test is imprecise, it is clearly "designed to avoid converting federal courts into super zoning tribunals." Id. Consequently, what "shocks the conscience" is "only the most egregious official conduct." Id. (quotation omitted). Mere evidence of "improper motives" is insufficient. Id. at 286 n.9.

Here, as they did in the District Court, the Appellants argue that the Appellees violated their substantive due process rights by declining to rezone the property to allow

6

for development of an AQC, by allegedly manipulating the Special Study, by failing to publicize the Study for comment, and by denying McGrath's proposed amendment to the Township's Act 537 Plan. They argue that the Appellees acted without any rational land-use planning goal, and that they wrongfully blocked the development of the property because Gutzmirtl had previously sought to buy the property for himself. They contend that the Supervisors' conduct "shocks the conscience." We disagree.

As a matter of law, the conduct of the Appellees in this case is insufficiently egregious to shock the conscience. In the analogous Eichenlaub, 385 F.3d 274, our judicial conscience was not shocked by the plaintiffs' evidence that zoning officials "applied subdivision requirements to [the plaintiffs'] property that were not applied to other parcels; that they pursued unannounced and unnecessary inspection and enforcement actions; that they delayed certain permits and approvals; that they improperly increased tax assessments; and that they maligned and muzzled the [plaintiffs]." Id. at 286. In affirming the district court's grant of summary judgment on the plaintiffs' substantive due process claim, we explained that "these complaints are examples of the kind of disagreement that is frequent in planning disputes," emphasizing that they involved "no allegation[s] of corruption or self-dealing." Id. Here, as in Eichenlaub, the Appellants faced delays and denials of their development proposals, and perhaps some "malign[ing] and muzz[ling]" by Gutzmirtl. See id. These actions by the Appellees are insufficient, as a matter of law, to shock the conscience.

Additionally, we are not persuaded that the Appellees' conduct shocks the conscience because it was permeated with either self-dealing or corruption. Cf. Eichenlaub, 385 F.3d 286 (suggesting that corruption and self-dealing may shock the conscience). As evidence of "self-dealing," the Appellants cite only Gutzmirtl's earlier, unsuccessful attempts to purchase the golf course, supporting a reasonable inference that Gutzmirtl may have acted out of spite or in the remote hope that he might one day purchase the property himself. Taking this allegation as true, we conclude that Gutzmirtl's "improper motives" were not so egregious as to shock the conscience. See id. at 286 n.9. Additionally, the Appellants fall short in their attempt to prove that one or more of the Supervisors corrupted the results of the Special Study, or that the Study was a farce. Contrary to the Appellants' contentions, the undisputed evidence suggests that the Township's engineer intended to conduct the Study "legit[imately]" and "the right way," notwithstanding the Supervisors' alleged efforts to influence the outcome. App. 458. No evidence suggests otherwise. In view of these facts, we conclude that the Appellees acted, at worst, with mere improper motives. Without more, these improper motives do not shock the conscience, as a matter of law. See Eichenlaub, 385 F.3d at 286 n.9.

* * * * *

We have considered all contentions of the parties and conclude that no further discussion is necessary.

The judgment of the District Court will be AFFIRMED.

8