Terry and Diane **KRISS**, individually as husband and wife, Plaintiffs,

v.

**FAYETTE COUNTY**, a municipality; the Fayette County Airport Authority, a municipal unit; Vincent Vicites, individually and in his official capacity as Commissioner for Fayette County; Vincent Zapotosky, individually and in his official capacity as Commis-

sioner for Fayette County; Sara Ro-
siek, individually and in her official
capacity as Director of the Office of
Planning, Zoning, and Community
Development; and Terry Shallenber-
ger, individually and in his official
capacity as the Fayette County Air-
port Authority Board Chairman, De-
fendants.

No. 2:11cv57.

United States District Court,
W.D. Pennsylvania.

Oct. 27, 2011.

Adam R. Gorzelsky, Williams Law Offices, Greensburg, PA, for Plaintiffs.

Marie Milie Jones, JonesPassodelis, PLLC, Avrum Levicoff, Edward I. Levicoff, Levicoff, Silko & Deemer, Charles H. Saul, Kyle T. McGee, Margolis Edelstein, William H. Difenderfer, Difenderfer, Rothman & Haber, James H. Love, Pittsburgh, PA, for Defendants.

### MEMORANDUM ORDER

DAVID STEWART CERCONE, District Judge.

On January 26, 2011, this case was referred to United States Magistrate Judge Cathy Bissoon for pretrial proceedings in accordance with the Magistrates Act, 28 U.S.C. §§ 636(b)(1)(A) and (B), and Rules 72.C and 72.D of the Local Rules for Magistrates.

On June 17, 2011, the magistrate judge issued a Report (Doc. 44) recommending that Defendants Fayette County, Sara Rosiek, Vincent Vicites, and Vincent Zapotosky's Motion to Dismiss (Doc. 24) be

granted, that Defendant Terry Shallenberger's Motion to Dismiss (Doc. 26) be granted, and that Defendant Fayette County Airport Authority's Motion to Dismiss (Doc. 28) be granted.

Because amendment of time-barred claims would be futile, the magistrate judge recommended that plaintiffs' claims should be dismissed with prejudice to the extent they are based on alleged unconstitutional conduct prior to January 18, 2009. The magistrate judge further recommended that plaintiffs' substantive due process claim should be dismissed with prejudice because it is not based upon a protected property interest and amendment therefore would be futile. The magistrate judge recommended that plaintiffs' other claims should be dismissed without prejudice.

Service of the Report and Recommendation was made on the parties, and plaintiffs filed objections (Doc. 45) on July 1, 2011. Defendant Fayette County Airport Authority filed a response (Doc. 47) to plaintiffs' objections on July 20, 2011, and defendant Terry Shallenberger filed a response (Doc. 48) on July 22, 2011. Defendants Fayette County, Sara Rosiek, Vincent Vicites, and Vincent Zapotosky did not file a response.

After a *de novo* review of the pleadings and documents in the case, together with the Report and Recommendation and the Objections thereto, the following Order is entered:

AND NOW, on this 24th day of October, 2011, IT IS ORDERED that [24] Defendants Fayette County, Sara Rosiek, Vincent Vicites, and Vincent Zapotosky's Motion to Dismiss is **GRANTED,** [26] Defendant Terry Shallenberger's Motion to Dismiss is **GRANTED,** and [28] Defendant Fayette County Airport Authority's Motion to Dismiss is **GRANTED.** Plaintiffs' substantive due process claim (Count 1) is **DISMISSED WITH PREJUDICE.** To the extent plaintiffs' First Amendment retaliation claims (Count 2) are based upon alleged unconstitutional conduct prior to January 18, 2009, they are **DISMISSED WITH PREJUDICE.** Plaintiffs' remaining claims are **DISMISSED WITHOUT PREJUDICE.**

IT IS FURTHER ORDERED that plaintiffs are granted leave to file an Amended Complaint on or before **November 14, 2011.** Failure to file an Amended Complaint will result in the Court's dismissal of this case. This ruling is without prejudice to the appropriate defendant(s) raising any applicable defense or ground for dismissal in a responsive pleading.

IT IS FURTHER ORDERED that [44] the Report and Recommendation of Magistrate Judge Bissoon dated June 17, 2011, as augmented herein is adopted as the Opinion of the Court.

Plaintiffs' objections are misplaced and unavailing. First, plaintiffs' attempt to distinguish *Cowell* is wide of the mark. Each zoning action was directed at distinct parcels and produced an immediate and palpable legal effect. The potential for a zoning decision to produce an amorphous and intangible effect on an adjacent parcel of land is inherent in all such decisions and such an effect cannot be used to show anything more than "a general interference with property rights." Furthermore, the cobbling together of such effects over a period of years does not make the whole more than the sum of its parts or otherwise suffice to satisfy the first and second requirements of the continuing violation theory. *Compare Cowell v. Palmer Tp.,* 263 F.3d 286, 294–95 (3d Cir.2001) (The continuing violation doctrine is equitable in nature and is not a vehicle for relieving a party from the prior failure to pursue legal

redress for palpable and cognizable injury.).

Second, a cause of action accrues when the fact of injury and its connection to the defendant would be recognized by a reasonable person. The fact that one may or may not recognize the injury as constituting a particular cause of action is immaterial. *See, e.g., Thomas v. Pennsylvania Board of Probation & Parole,* 2011 WL 2491365, *17 (W.D.Pa. May 17, 2011) ("A claim accrues when the plaintiff becomes aware, or should have become aware, of both the fact of injury and its causal connection to the Defendant. *See Delaware State College v. Ricks,* 449 U.S. 250, 258, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980) (it is the wrongful act that triggers the start of the limitations period); *Keystone Ins. Co. v. Houghton,* 863 F.2d 1125, 1127 (3d Cir. 1988) (a federal cause of action accrues when the plaintiff is aware, or should be aware, of the existence of and source of injury, not when the potential claimant knows or should know that the injury constitutes a legal wrong).". Thus, plaintiffs' cause of action for a substantive due process violation was not tolled "until the [encapsulating moment when the] pattern of oppression and harassment became most clear [ ]." Plaintiffs' Brief in Support of Objections (Doc. No. 46) at 5–6.

Third, plaintiffs misunderstand the property interests falling within the protections afforded to one's use and enjoyment of real property. Their desire to be free from personal anguish and/or their personal aesthetic preferences about how adjacent land should or should not be used are not protected or enforceable use and enjoyment interests. *See Karpiak v. Russo,* 450 Pa.Super. 471, 676 A.2d 270, 272 (1996) (annoying and inconvenient use of adjacent property for landscaping business which generated noise and dust failed to satisfy the requirement under Restatement (Second) of Torts § 822 that an invasion be "seriously annoying or intolerable" in order to constitute unlawful invasion of plaintiff's use and enjoyment of real estate); Restatement of Torts § 822, Comment e ("Freedom from discomfort and annoyance while using land is often as important to a person as freedom from physical interruption with his use or freedom from detrimental change in the physical condition of the land itself. This interest in freedom from annoyance and discomfort in the use of land is to be distinguished from the interest in freedom from emotional distress (see § 46, vol. I). The latter is purely an interest of personality and receives very limited legal protection, whereas the former is essentially an interest in the usability of land and, although it involves an element of personal tastes and sensibilities, it receives much greater legal protection.").

Fourth, mere identification of campaign contributions to winning candidates for county commissioner does not set forth a factual showing of entitlement to relief based on corruption and self-dealing. Merely asserting a causal link between such contributions and subsequent local zoning action is insufficient to establish an ability to show personal gain or advantage. Something more is required. As the magistrate judge noted, this alleged conduct consists of nothing more than "the politics and animosities that often animate local decision-making."

Similarly, the advanced allegations concerning the failure to investigate plaintiffs' most recently filed zoning complaint create at best a speculative hunch that retaliation may be at the base of the inaction. Such conjecture does not push the claim beyond the realm of mere possibility. *See Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) ("A claim has facial plausibility when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.") (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). *Id.*

Sixth, plaintiffs' allegations concerning defendant Shallenberger are based on little more than certain individuals' appearance at a public meeting that occurred well before the event in question and the Board's subsequent decision to maintain the status quo. While plaintiffs are not expected to unveil the clandestine inner workings of local politics without discovery, they must set forth a valid basis for pursuing a timely brought cause of action. *Id.* (The allegations of the complaint must be grounded in enough of a factual basis to move the claim from the realm of mere possibility to one that shows entitlement by presenting "a claim to relief that is plausible on its face."). This they have failed to do. And the proposition that Shallenberger somehow tainted the other member's votes with discriminatory animus is under the current allegations nothing more than an *ignoratio elenchi.*

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

CATHY BISSOON, United States Magistrate Judge.

### I. RECOMMENDATION

It is respectfully recommended that Defendants Fayette County, Sara Rosiek, Vincent Vicites, and Vincent Zapotosky's Motion to Dismiss (Doc. 24) be granted, that Defendant Terry Shallenberger's Motion to Dismiss (Doc. 26) be granted, and that Defendant Fayette County Airport Authority's Motion to Dismiss (Doc. 28) be granted, as discussed below.

## II. REPORT

### BACKGROUND

#### A. Factual Background

Plaintiffs Terry Kriss and Diane Kriss own a historic home known as the Isaac Meason House ("Meason House"), located in Fayette County, Pennsylvania. Compl. ¶¶ 5, 12–15 (Doc. 1). The Meason House is surrounded on all sides by property owned by various members of the Cellurale family. *Id.* at ¶ 16. This case involves Plaintiffs' long running feud with the Cellurales, the Cellurales' alleged connections with Fayette County officials, and Fayette County officials' alleged campaign to assist the Cellurales by taking zoning actions to diminish Plaintiffs' property value, failing to investigate alleged zoning violations by the Cellurales, and evicting Plaintiff Terry Kriss from an airport hangar. *See id.* at ¶ 1.

Plaintiffs' forty-eight page complaint includes allegations dating back to 1995 related to Plaintiffs' various disputes with the Cellurales. A limited summary of Plaintiffs' allegations is provided below for background.

*Zoning Disputes*

Starting from sometime before 1995, Joseph Cellurale, Jr. operated or continues to operate an auto repair/body shop business near the Meason House. *See id.* at ¶ 19. This business allegedly was not in compliance with the Fayette County Zoning Ordinance. *Id.* at ¶ 20. As a result, on April 19, 1995, Joseph Cellurale, Jr. attempted to rezone five acres of his land. *Id.* Following Plaintiffs' opposition to the rezone, as well as Plaintiff Terry Kriss's successful appeal regarding a building permit obtained by Joseph Cellurale, Jr., Joseph Cellurale, Jr. withdrew his petition to rezone. *Id.* at ¶¶ 22–23, 26–27.

On August 22, 1995, Joseph Cellurale, Jr. obtained a non-conforming use permit.

*Id.* at ¶ 28. Following Plaintiffs' series of appeals to the Fayette County Zoning Hearing Board and the Court of Common Pleas of Fayette County, the non-conforming use was reversed on May 17, 1996. *Id.* at ¶¶ 29–33, 36–39. On November 11, 1996, Fayette County Zoning Office issued a cease and desist order to Joseph Cellurale, Jr., but Joseph Cellurale, Jr. nonetheless continued to operate his business. *Id.* at ¶¶ 41–42.

On April 8, 1999, Joseph Cellurale, Jr. again attempted to rezone some of his property. Over Plaintiffs' objections, the Fayette County Commissioners approved a six-acre rezone on September 9, 1999. *Id.* at ¶ 71–72, 81. Following Plaintiffs' appeals, the Court of Common Pleas found the rezone illegal and issued a cease and desist order to Joseph Cellurale, Jr. *Id.* ¶¶ 83–87. Despite the cease and desist order and Plaintiffs' numerous requests for enforcement of the order, Joseph Cellurale, Jr. continues to operate his business. *Id.* at ¶¶ 90–91.

On May 23, 2001, the Fayette County Zoning Hearing Board approved a "special exception" request by Joseph Cellurale, Jr. *Id.* at ¶ 114. The special exception imposed six conditions on Joseph Cellurale, Jr., including limiting his hours of business operations and requiring construction of a privacy fence with vegetative barrier to prevent the view of stored vehicles. *Id.* at ¶ 118. On November 11, 2007, the Zoning Hearing Board overturned an enforcement against Joseph Cellurale, Jr., despite his failure to strictly comply with the conditions of the special exception. *Id.* at ¶¶ 161–70. On October 8, 2009, Plaintiffs filed a civil suit against Joseph Cellurale, Jr. to enforce the conditions of the special exception. *Id.* at ¶ 335.

In June 2010, Plaintiff Diane Kriss appeared at the Zoning Office and discovered that no building permit existed for a con-

struction project on the property of James and Marilyn Cellurale. *Id.* at ¶¶ 340–42. Over the next several months, Plaintiffs made several inquiries and complaints to the Zoning Office regarding the construction project. *Id.* at ¶¶ 343–58. Defendant Sara Rosiek, the Director of Zoning, allegedly did not forward Plaintiffs' complaints to the appropriate Zoning Officers for investigation. *Id.* at ¶¶ 358–61. Plaintiffs have not yet received a "reasonable response" to their complaints and inquiries. *Id.* at ¶ 362.

Defendant Rosiek allegedly instructed her employees not to investigate any of Plaintiffs' complaints. *Id.* at ¶ 466. Defendants Vincent Vicites and Vincent Zapotosky, Fayette County Commissioners, allegedly instructed Defendant Rosiek to engage in this behavior. *Id.* at ¶¶ 468–69. Such conduct by Defendants Rosiek, Vicites, and Zapotosky allegedly was undertaken in retaliation for Plaintiffs' filing of the *October 8, 2009 lawsuit against Joseph Cellurale, Jr. Id.* at ¶ 470.

### Airport Lease

Starting in 1999, Plaintiff Terry Kriss leased a storage facility at Joseph A. Hardy Connellsville Airport. *Id.* at ¶ 212. On September 9, 2008, Plaintiff Terry Kriss had a heated argument with Milissa Chomiak, a secretary for Defendant Fayette County Airport Authority ("Airport Authority"). *Id.* at ¶¶ 219, 228–30. On September 26, 2008, at an Airport Authority hearing, Ms. Chomiak alleged that Plaintiff Terry Kriss threatened her. *Id.* at ¶ 233. Defendant Terry Shallenberger, Chairman of the Airport Authority Board, moved to evict Plaintiff Terry Kriss from the Airport. *Id.* at ¶ 241. The Board voted to evict Plaintiff Terry Kriss. *Id.*

In April 2009, the Airport Authority terminated Ms. Chomiak. *Id.* at ¶ 246. At the May 19, 2009 Airport Authority meet-

ing, Plaintiffs requested to be reinstated due to Ms. Chomiak's termination. *Id.* at ¶ 247. Plaintiffs offered to sign a five-year lease, but the Airport Authority Board declined to reinstate Plaintiffs. *Id.* at ¶¶ 248–250.

## B. *Procedural Background*

Plaintiffs brought this action under 42 U.S.C. § 1983, alleging violations of their rights under the First and Fourteenth Amendments to the U.S. Constitution. In Count 1 of the Complaint, Plaintiffs allege that Defendants Fayette County, Vincent Vicites, Vincent Zapotosky, and Sara Rosiek (collectively, "the County Defendants") violated Plaintiffs' right to substantive due process by participating in a scheme to circumvent county zoning laws for the purpose of assisting the Cellurale family in an alleged campaign to diminish the value of the Meason House. *Id.* at ¶¶ 446–461.

In Count 2, Plaintiffs allege two instances of retaliation against them for activity protected under the First Amendment. First, Plaintiffs allege that when they filed their October 8, 2009 lawsuit against Joseph Cellurale, Jr., the County Defendants retaliated against Plaintiffs by "failing to investigate or legitimately acknowledge any zoning violations alleged by Plaintiffs against the Cellurales." *Id.* at ¶¶ 463–475. Second, Plaintiffs allege that after Plaintiffs alleged various zoning violations against the Cellurales between 1995 and 2008, Defendants Fayette County Airport Authority and Terry Shallenberger retaliated against Plaintiffs by supporting Plaintiff Terry Kriss's eviction from the Airport and publicly discussing private, unproven allegations of Ms. Chomiak. *Id.* at ¶¶ 476–479.

All Defendants filed motions to dismiss all claims against them. Docs. 24, 26, 28. The County Defendants raise various arguments: (1) Plaintiffs' substantive due

process claim is barred by the statute of limitations; (2) Plaintiffs fail to allege any property interest protected by due process; (3) Plaintiffs do not allege any "conscience shocking" conduct sufficient to state a claim for violation of substantive due process rights; (4) Plaintiffs failed to allege any facts supporting causation for their First Amendment retaliation claim; (5) Plaintiffs cannot use a § 1983 action to compel Defendant Fayette County to enforce zoning ordinances; (6) the individual County Defendants are entitled to qualified immunity; (7) Plaintiffs failed to state a claim against Defendant Fayette County because Plaintiffs have not alleged any policy or custom resulting in the alleged constitutional violations; and (8) Plaintiffs are not entitled to punitive damages.

Defendant Airport Authority raises five arguments: (1) Plaintiffs' First Amendment retaliation claim against Defendant Airport Authority is barred by the statute of limitations; (2) this Court lacks subject matter jurisdiction under the *Rooker–Feldman* doctrine; (3) Plaintiffs' claims are barred under the collateral attack doctrine; (4) Plaintiffs failed to state a claim under § 1983 because they do not allege any action under color of state law; and (5) Plaintiffs failed to state a claim against Defendant Airport Authority because Plaintiffs have not alleged any policy or custom resulting in the alleged constitutional violation.

Finally, Defendant Shallenberger raises five arguments: (1) Plaintiffs' First Amendment retaliation claim against Defendant Shallenberger is barred by the statute of limitations; (2) Plaintiffs failed to state a First Amendment retaliation claim because the alleged protected activity occurred after the alleged retaliation; (3) Plaintiffs failed to state a First Amendment retaliation claim because Plaintiffs do not allege that Defendant Shallenberger

knew that Ms. Chomiak's allegations against Plaintiff Terry Kriss were false; (4) Plaintiffs failed to state a claim against Defendant Shallenberger because Defendant Shallenberger's single vote on the Airport Authority Board could not have resulted in Plaintiff Terry Kriss's eviction from the Airport; and (5) Defendant Shallenberger is entitled to qualified immunity.

## ANALYSIS

### A. Subject Matter Jurisdiction

As an initial matter, this Court must determine if it has subject matter jurisdiction over Plaintiffs' claims. Defendant Airport Authority asserts that this Court lacks subject matter jurisdiction under the *Rooker–Feldman* doctrine. Airport Authority Br. at 11–15 (Doc. 29). The County Defendants purport to incorporate by reference Defendant Airport Authority's jurisdiction arguments. County Br. at 22 (Doc. 25).

■ "Under the *Rooker–Feldman* doctrine, a district court is precluded from entertaining an action, that is, the federal court lacks subject matter jurisdiction, if the relief requested effectively would reverse a state court decision or void its ruling." *Taliaferro v. Darby Twp. Zoning Bd.*, 458 F.3d 181, 192 (3d Cir.2006) (citing *Whiteford v. Reed*, 155 F.3d 671, 674 (3d Cir.1998)). The *Rooker–Feldman* doctrine, therefore, precludes federal court jurisdiction over claims that were actually litigated in state court or claims that are "inextricably intertwined" with adjudication by a state court. *Id.* (citing *Parkview Assoc. P'ship v. City of Lebanon*, 225 F.3d 321, 325 (3d Cir.2000)).

■ Defendant Airport Authority argues that adjudication of Plaintiffs' claims would require re-litigation of various zoning-related rulings of the County Zoning Hearing Board, the Fayette County Court of Common Pleas, and the Pennsylvania Commonwealth Court. Airport Authority Br. at 15 (Doc. 29). But Plaintiffs' First Amendment claim against Defendant Airport Authority (the only claim against the Airport Authority) does not challenge the various zoning-related decisions alleged in the Complaint. Plaintiffs allege that Defendant Airport Authority (and Defendant Shallenberger) retaliated against Plaintiffs after Plaintiffs pursued various zoning-related actions against the Cellurales. Whether the various zoning-related actions were correctly decided is irrelevant to whether Defendant Airport Authority retaliated against Plaintiffs for filing such actions. The *Rooker–Feldman* doctrine, therefore, does not preclude this Court's subject matter jurisdiction over Plaintiffs' First Amendment claim against Defendant Airport Authority (or Defendant Shallenberger).

■ For similar reasons, the *Rooker–Feldman* doctrine does not preclude subject matter jurisdiction over Plaintiffs' First Amendment retaliation claim against the County Defendants. Plaintiffs' First Amendment claim against the County Defendants is premised upon the County Defendants' alleged retaliation against Plaintiffs for Plaintiffs' filing of the October 8, 2009 lawsuit against Joseph Cellurale, Jr. The outcome of that lawsuit is immaterial to the adjudication of Plaintiffs' First Amendment retaliation claim against the County Defendants.

■ Finally, the *Rooker–Feldman* doctrine does not preclude subject matter jurisdiction over Plaintiffs' substantive due process claim. Federal relief on a substantive due process claim alleging that zoning decisions diminished property values does not necessarily require a finding that state court judgments on the zoning decisions were erroneous. *Taliaferro*, 458 F.3d at 193. In other words, a decision in favor of Plaintiffs on their due process

claim would not mean that the County Zoning Board abused its discretion in making its zoning decisions. *See id.*

Defendants also assert that Plaintiffs' claims are barred by the collateral attack doctrine, but the collateral attack doctrine does not apply for the same reasons that the *Rooker–Feldman* doctrine does not apply.

## B. *Whether Defendants Fayette County and Airport Authority May Be Liable*

■ The "first inquiry in any case alleging municipal liability under § 1983 is the question whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton v. Harris,* 489 U.S. 378, 385, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). This is because a municipality cannot be vicariously liable under 42 U.S.C. § 1983 for their employees' actions. *Connick v. Thompson,* — U.S. ——, 131 S.Ct. 1350, 1359, 179 L.Ed.2d 417 (2011). Instead, a municipality may be liable only for injuries caused by "action pursuant to official municipal policy." *Id.* "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Id.* Thus, the Court must determine whether Plaintiffs have alleged sufficient facts to support a finding that the alleged unconstitutional conduct constituted action pursuant to a policy or custom of Defendants Fayette County and Airport Authority.

### 1. *Fayette County*

Defendant Fayette County makes a cursory argument that the County's alleged failure to enforce zoning ordinances against the Cellurales is not a policy. County Br. at 19–20. Defendant Fayette County, however, does not address Plaintiffs' allegations that the alleged unconstitutional conduct comprised acts of policymaking officials and was so pervasive as to constitute a Fayette County custom. *See* Compl. at ¶¶ 452, 455–56, 465–69, 472–74. Thus, Defendant Fayette County's motion to dismiss on the basis of no official policy or custom should be denied.

### 2. *Airport Authority*

■ Defendant Airport Authority asserts that Plaintiffs failed to allege any action under color of state law, as required for a § 1983 action, and failed to allege any municipal policy or custom, as required to render Defendant Airport Authority liable under § 1983. Defendant Airport Authority's assertions warrant little attention, as the Airport Authority Board's action in rejecting Plaintiffs' 2009 lease proposal was an action taken under color of state law that represents the policy of Defendant Airport Authority.[1] *See Pembaur v. City of Cincinnati,* 475 U.S. 469, 480, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986) ("No one has ever doubted, for instance, that a municipality may be liable under § 1983 for a single decision by its properly constituted legislative body—whether or not that body had taken similar action in the past or intended to do so in the future—because even a single decision by such a body unquestionably constitutes an act of official government policy.").

## C. *Substantive Due Process Claim Against County Defendants*

### 1. *Statute of Limitations*

■ Pennsylvania's two-year statute of limitations for personal injury actions ap-

---

1. The Court need not determine if the other alleged acts of Defendant Airport Authority were done pursuant to municipal policy or custom, because Plaintiffs concede that their other claims against Defendant Airport Authority are barred by the statute of limitations. *See infra* Part E.1.

plies to Plaintiffs' claims under § 1983. *See Lake v. Arnold,* 232 F.3d 360, 368–69 (3d Cir.2000). Plaintiffs filed their complaint on January 18, 2011. Thus, any claims arising from Defendants' conduct prior to January 18, 2009 appears to be time-barred. Plaintiffs nonetheless argue that their substantive due process claim based on such conduct is timely based on the continuing violations doctrine.

 The continuing violations doctrine is an "equitable exception to the timely filing requirement." *Cowell v. Palmer Twp.,* 263 F.3d 286, 292 (3d Cir. 2001) (quoting *West v. Philadelphia Elec. Co.,* 45 F.3d 744, 754 (3d Cir.1995)). "[W]hen a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period; in such an instance, the court will grant relief for the earlier related acts that would otherwise be time barred." *Id.* (quoting *Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am.,* 927 F.2d 1283, 1295 (3d Cir.1991)).

 The continuing violations doctrine does not apply to "the occurrence of isolated or sporadic acts." *Id.* (quoting *West,* 45 F.3d at 755). Regarding this inquiry, courts should consider at least three factors: (1) subject matter-whether the violations constitute the same type of discrimination, tending to connect them in a continuing violation; (2) frequency-whether the acts are recurring or more in the nature of isolated incidents; and (3) degree of permanence-whether the act had a degree of permanence which should trigger the plaintiff's awareness of and duty to assert his/her rights and whether the con-

sequences of the act would continue even in the absence of a continuing intent to discriminate. *Id.* (citing *West,* 45 F.3d at 755 n. 9). The consideration of "degree of permanence" is the most important of the factors. *Id.* (citing *Berry v. Bd. of Supervisors of Louisiana State Univ.,* 715 F.2d 971, 981 (5th Cir.1983)).

In their complaint, Plaintiffs allege that the County Defendants violated Plaintiffs' substantive due process rights by intentionally diminishing the value of the Meason House by participating "in an ongoing scheme to circumvent all Fayette County laws and accepted procedures for the benefit of the Cellurale family and for the intended detriment of the Krisses." Compl. at ¶¶ 447–48 (Doc. 1). Plaintiffs allege that "[t]he rendering of official decisions and the utilization of behind the scenes coercion for the express purpose of depriving the Krisses of their constitutional right to their property is shocking to the conscience." *Id.* at ¶ 453. Plaintiffs seek "[c]ompensatory damages for the lost value of the Meason House, for attorney fees forced to be expended appealing the unlawful decisions regarding the Cellurales and retaliatory zoning offenses leveled against the Krisses, and for emotional pain and suffering." *Id.* at ¶ 461. The loss in value of the Meason House allegedly is attributable to "[t]he encroachment of the Cellurales' illegal activity" that "has destroyed the view shed from the Meason House." *Id.* at ¶ 438. From Plaintiffs' complaint, the substantive due process claim therefore appears to be based on Defendants' alleged conduct in making decisions regarding various zoning issues.[2]

---

**2.** In Plaintiffs' brief in response to the County Defendants' motion to dismiss, Plaintiffs assert that they "have not alleged that their substantive due process rights have been violated by virtue of the adverse decisions and

inactions outlined in their Complaint." Pls.' Response to County Defs. at 4 (Doc. 34). Plaintiffs refer to an "ongoing campaign to deprive the Krisses of their property." *Id.* But if this "ongoing campaign" does not con-

Under *Cowell*, the continuing violations doctrine does not apply to Plaintiffs' substantive due process claim. A continuing violation requires that the "last act evidencing the continuing practice falls within the limitations period." *Cowell*, 263 F.3d at 292. In Plaintiffs' complaint, the only alleged conduct within the two-year limitations period (i.e., after January 18, 2009) that potentially is related to Plaintiffs' substantive due process claim is the County Defendants' alleged failure to investigate Plaintiffs' complaints about zoning violations on James and Marilyn Cellurale's property. *See* Compl. at ¶¶ 340–362. Even assuming arguendo that failure to investigate alleged zoning violations could constitute a substantive due process violation, such conduct does not evidence a continuing violation when the three continuing violation factors are applied in this case.

First, the alleged conduct does not relate to the same "subject matter." Plaintiffs allege a variety of zoning-related actions by the County Defendants, but those zoning actions relate to distinct issues. For example, the alleged failure to investigate alleged zoning violations on James and Marilyn Cellurale's property has nothing to do with actions related to Plaintiffs' property or actions related to Joseph Cellurale, Jr.'s property.

The Third Circuit in *Cowell* rejected a similar substantive due process continuing violation theory based on an alleged "campaign of harassment" amounting to a "general interference with property rights." *Cowell*, 263 F.3d at 294. In *Cowell*, the plaintiffs alleged that the township imposed two liens on the plaintiffs' property to retaliate against them for challenging township zoning changes and to cause financial harm to the plaintiffs. *See id.* at 288. Because the liens were imposed outside the two-year limitations period, the plaintiffs asserted a continuing violation theory based on an alleged "campaign of harassment" involving the township's imposition of additional costs and conditions on the plaintiffs' property that reduced the sales prices of the plaintiffs' lots. *Id.* at 294. In applying the "subject matter" factor of the continuing violation test, the court found that the imposition of additional costs and conditions on the plaintiffs' property was unrelated to the imposition of liens. Although the alleged acts all generally related to the plaintiffs' property rights, "substantive due process jurisprudence has always focused on the particular acts of the defendant, and not on a general interference with property rights." *Id.* (citing *Woodwind Estates, Ltd. v. Gretkowski*, 205 F.3d 118, 125 (3d Cir.2000); *Blanche Road Corp. v. Bensalem Twp.*, 57 F.3d 253, 268 (3d Cir.1995)). Similarly here, the various alleged actions by the County Defendants generally relate to property rights but do not relate to the same "subject matter." Thus, the "subject matter" factor of the continuing violation test favors a finding of no continuing violation.

Second, because the various alleged actions by the County Defendants are unrelated, the "frequency" factor of the continuing violation test also favors a finding of no continuing violation. *See id.* at 295 (holding that the type of acts that would satisfy the "frequency" factor "must at least be acts of substantially similar nature to those which were the basis of the original claim").

Third, the "degree of permanence" factor also favors a finding of no

---

sist of Defendants' "adverse decisions and inactions," it is unclear what affirmative acts support Plaintiffs' continuing violation theory.

*See Cowell*, 263 F.3d at 293 ("The focus of the continuing violations doctrine is on affirmative acts of the defendants.").

continuing violation. The "degree of permanence" factor focuses on the policy rationale of the statute of limitations—"the continuing violations doctrine should not provide a means for relieving plaintiffs from their duty to exercise reasonable diligence in pursuing their claims." *Id.* at 295. In the present case, Plaintiffs were aware of the alleged wrongfulness of the County Defendants' actions when those actions were taken. For example, at the time the County Defendants took action related to Joseph Cellurale, Jr.'s property, Plaintiffs were aware of any alleged harm to their property. Plaintiffs' filing of their October 8, 2009 lawsuit against Joseph Cellurale, Jr. to enforce conditions of the special exception granted to Joseph Cellurale, Jr. evidences Plaintiffs' awareness of alleged harm to their property caused by zoning actions related to Joseph Cellurale, Jr.'s property. To allow Plaintiffs "to proceed with their substantive due process claim now would be unfair" to the County Defendants "and contrary to the policy rationale of the statute of limitations." *Id.* at 295.

Thus, all three continuing violation factors favor a finding of no continuing violation. The alleged failure of the County Defendants to investigate alleged zoning violations by James and Marilyn Cellurale in 2010 does not relieve Plaintiffs from the statute of limitations on substantive due process claims related to the County Defendants' actions regarding different property and different zoning issues dating back to 1995. *See id.* To the extent Plaintiffs assert a substantive due process claim based upon any conduct prior to January 18, 2009, such a claim is barred by the statute of limitations.

### 2. Plaintiffs Do Not Allege Harm To A Property Interest Protected By Due Process

■■■■ "To establish a substantive due process claim, a plaintiff must prove the particular interest at issue is protected by the substantive due process clause and the government's deprivation of that protected interest shocks the conscience." *Chainey v. Street,* 523 F.3d 200, 219 (3d Cir.2008) (citing *United Artists Theatre Circuit, Inc. v. Twp. of Warrington,* 316 F.3d 392, 400–02 (3d Cir.2003)). Because ownership of real property is protected by substantive due process, a plaintiff alleges a property interest worthy of substantive due process protection "in situations where the governmental decision in question impinges upon a landowner's use and enjoyment of property." *DeBlasio v. Zoning Bd. of Adjustment for Twp. of W. Amwell,* 53 F.3d 592, 600–01 (3d Cir.1995), *overruled on other grounds by United Artists,* 316 F.3d at 400–01.

■■■■ Even if the statute of limitations did not preclude a substantive due process claim based on conduct prior to January 18, 2009, Plaintiffs' substantive due process claim should be dismissed because Plaintiffs have failed to allege harm to a property interest entitled to substantive due process protection.[3] Plaintiffs argue that the County Defendants have interfered with Plaintiffs' "use and enjoyment" of their property "by significantly diminishing its economic value and creating an atmosphere of oppression" through an "overarching scheme to drive the Krisses from

---

**3.** As explained above, the only alleged conduct after January 18, 2009, potentially relevant to Plaintiffs' substantive due process claim, is the alleged failure of the County Defendants to investigate alleged zoning violations on James and Marilyn Cellurale's property. Notably, the complaint is devoid of any allegations that the failure to investigate the alleged zoning violations has limited Plaintiffs' use and enjoyment of their property.

their property." Pls.' Response to County Defs. at 7 (Doc. 34). But none of the County Defendants' actions "impinges upon" Plaintiffs' "use and enjoyment" of Plaintiffs' property. *DeBlasio*, 53 F.3d at 601. Some of the alleged zoning actions related to the Cellurales' property allegedly have allowed the Cellurales to "destroy[ ] the view shed from the Meason House," but such actions do not limit Plaintiffs' use and enjoyment of the Meason House. Other alleged zoning actions related to the Cellurales' property were resolved in Plaintiffs' favor and, therefore, could not have limited Plaintiffs' use and enjoyment of their property. *See Siegmond v. Fedor*, No. 01–2266, 2004 WL 1490430, at *4 (M.D.Pa. June 29, 2004) (finding that issuance of zoning enforcement notices did not interfere with use and enjoyment of property where plaintiffs were not required to take action on their properties and plaintiffs successfully appealed zoning enforcements). The alleged zoning enforcement actions against Plaintiffs all were withdrawn, so those actions also could not have limited Plaintiffs' use and enjoyment of the Meason House. *See id.* Finally, the alleged "undue influence in the wholly inappropriate Airport eviction," Pls.' Response to County Defs. at 7 (Doc. 34), is completely unrelated to Plaintiffs' use and enjoyment of the Meason House.

■■■ Plaintiffs also argue that property value is a property interest protected by substantive due process. The Court of Appeals for the Third Circuit does not appear to have addressed whether property value, by itself, is protected by substantive due process. The undersigned agrees with other district courts in the Third Cir-

cuit and the Court of Appeals for the Second Circuit, which have found that a decline in property value, by itself, cannot support a substantive due process claim. *See BAM Historic Dist. Ass'n v. Koch,* 723 F.2d 233, 237 (2d Cir.1983); *Tri–County Concerned Citizens Ass'n v. Carr,* No. 98–4184, 2001 WL 1132227, at *4 (E.D.Pa. Sept. 18, 2001), *aff'd,* 47 Fed.Appx. 149 (3d Cir.2002); *MacNamara v. County Council of Sussex Cnty.,* 738 F.Supp. 134, 142 (D.Del.1990), *aff'd,* 922 F.2d 832 (3d Cir. 1990); *Stop–Save Twp. Open Places, Inc. v. Bd. of Supervisors of Montgomery Twp.,* No. 96–7325, 1996 WL 663875, at *4 (E.D.Pa. Nov. 15, 1996) ("One does not have a protected property interest in the use of neighboring property because that use may adversely affect the value of his property." (citing *Mehta v. Surles,* 905 F.2d 595, 598 (2d Cir.1990))); *see also Stop the Beach Renourishment, Inc. v. Florida Dep't of Envtl. Protection,* —— U.S. ——, 130 S.Ct. 2592, 2605–06, 177 L.Ed.2d 184 (2010) (Scalia, J.) (plurality opinion) (suggesting that Due Process Clause does not impose "limits on government's ability to diminish property values by regulation"). Plaintiffs' attempt to distinguish those cases is unpersuasive.

Because Plaintiffs fail to allege harm to a property interest protected by substantive due process, Plaintiffs' substantive due process claim should be dismissed.[4]

*3. Plaintiffs Do Not Allege Behavior That "Shocks the Conscience"*

■■■ Even if Plaintiffs have alleged a property interest protected by substantive due process, Plaintiffs have not alleged behavior that "shocks the con-

---

**4.** In *Taliaferro,* the Third Circuit held that alleged injuries to the plaintiffs' property values and neighborhood arising from approval of a zoning variance were sufficiently concrete and particularized injuries to confer standing on the plaintiffs to bring a substantive due process claim against a township zoning board. 458 F.3d at 190–91. The court, however, did not address the merits of the substantive due process claim.

science," as required for a substantive due process violation. *Chainey,* 523 F.3d at 219. In the context of zoning actions, the "shocks the conscience" test "is designed to avoid converting federal courts into super zoning tribunals." *Eichenlaub v. Twp. of Indiana,* 385 F.3d 274, 285 (3d Cir. 2004). Thus, "[w]hat shocks the conscience is only the most egregious official conduct." *Id.* (quotation marks omitted).

■■■ Conscience-shocking behavior in the context of zoning actions requires allegations of corruption, self-dealing, or bias against an ethnic group. *See Eichenlaub,* 385 F.3d at 286; *Chainey,* 523 F.3d at 220 (discussing *Eichenlaub* ). Improper motive alone is insufficient to meet the "shocks the conscience" test. *Chainey,* 523 F.3d at 220. Further, "the politics and animosities that often animate local decision-making are not matters of constitutional concern." *Maple Props., Inc. v. Twp. of Upper Providence,* 151 Fed.Appx. 174, 180 (3d Cir.2005) (citing *Eichenlaub,* 385 F.3d at 285–86).

■■■ Thus, conduct of officials that may be "unfair" or "improper" from a property owner's perspective does not necessarily constitute a substantive due process violation. *Id.* at 180. For example, zoning actions taken "in the dark" without a "deliberative process," even if "targeted selectively" at a property owner, do not "shock the conscience." *Id.* at 179–80. Failure to follow a township attorney's advice, or making decisions based on concerns over impacts on neighbors, road conditions and reduced property values, even if not valid criteria for a zoning decision, does not shock the conscience. *Dotzel v. Ashbridge,* 306 Fed.Appx. 798, 801 (3d Cir.2009). Even a scheme to improperly apply ordinances, treat a property owner differently from nearby owners, actively inhibit a property owner's opportunity to develop its land, and intentionally disregard duties

under Pennsylvania state law does not amount to behavior that shocks the conscience. *Highway Materials, Inc. v. Whitemarsh Twp.,* 386 Fed.Appx. 251, 258 (3d Cir.2010).

In light of these standards and examples, Plaintiffs have not alleged behavior that shocks the conscience. Plaintiffs assert that they have alleged "corruption and self-dealing" through allegations of "a tangled web of family connections, friendships, political contributions, and outright disdain toward the Krisses." Pls.' Response to County Defs. at 12 (Doc. 34). Plaintiffs' characterizations aside, the alleged "corruption and self-dealing" amount to nothing more than "the politics and animosities that often animate local decision-making." *Maple Props.,* 151 Fed. Appx. at 180. The alleged actions of the County Defendants do not shock the conscience, even if those actions were "targeted selectively" at Plaintiffs and in favor of the Cellurales, contradicted advice of the County's attorney, involved unlawful closed door meetings, or intentionally disregarded County ordinances. *See* Pls.' Response to County Defs. at 12 (Doc. 34); *Maple Props.,* 151 Fed.Appx. at 180; *Dotzel,* 306 Fed.Appx. at 801; *Highway Materials,* 386 Fed.Appx. at 258. Further, accepting as true Plaintiffs' allegation that the County Defendants' motive was to assist the Cellurales in a scheme to "eject" Plaintiffs from their property, such a motive is not sufficiently egregious as to shock the conscience. *See Locust Valley Golf Club, Inc. v. Upper Saucon Twp.,* 391 Fed.Appx. 195, 199 (3d Cir.2010) (finding that township official's alleged "self-dealing" in taking zoning actions out of hope to purchase the plaintiff's property in the future was "not so egregious as to shock the conscience"). While the alleged conduct of the County Defendants might be "unfair" or "improper," such conduct does not rise

to the level of a substantive due process violation. *Maple Props.*, 151 Fed.Appx. at 180.

Thus, Plaintiffs' substantive due process claim should be dismissed on the additional ground that Plaintiffs have failed to allege behavior that shocks the conscience.

### D. *First Amendment Retaliation Claim Against County Defendants*

 "In order to plead a retaliation claim under the First Amendment, a plaintiff must allege: (1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action." *Thomas v. Independence Twp.*, 463 F.3d 285, 296 (3d Cir. 2006) (citing *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir.2003)). "To establish the requisite causal connection a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." *Lauren W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir.2007) (citing *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 503–04 (3d Cir.1997); *Woodson v. Scott Paper Co.*, 109 F.3d 913, 920–21 (3d Cir.1997)). "In the absence of that proof the plaintiff must show that from the 'evidence gleaned from the record as a whole' the trier of the fact should infer causation." *Id.* (quoting *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 281 (3d Cir. 2000)).

 Plaintiffs' First Amendment retaliation claim is based upon the County Defendants' failure to investigate alleged zoning violations by James and Marilyn Cellurale beginning in June 2010. *See* Compl. at ¶¶ 340–62. Plaintiffs allege that the County Defendants intentionally failed to investigate such alleged zoning violations in retaliation against Plaintiffs for filing the lawsuit against Joseph Cellurale, Jr. on October 8, 2009. *See id.* at ¶¶ 463–75.

Defendants argue that Plaintiffs have not alleged any facts to support a causal link between the protected activity of filing the lawsuit against Joseph Cellurale, Jr. and the alleged retaliatory action of failing to investigate alleged zoning violations by James and Marilyn Cellurale. County Defs.' Br. at 15–17 (Doc. 25). In response, Plaintiffs argue that they have alleged a fifteen-year pattern of antagonism against Plaintiffs that sufficiently establishes a causal link. Pls.' Response to County Defs. at 13–15 (Doc. 34).

 Plaintiffs' theory of causation fails because a "pattern of antagonism" to support causation refers to intervening antagonism between the time of the protected activity and the time of the alleged retaliatory conduct. *See Marra v. Philadelphia Housing Auth.*, 497 F.3d 286, 302 (3d Cir. 2007) ("Where the time between the protected activity and adverse action is not so close as to be unusually suggestive of a causal connection standing alone, courts may look to the intervening period for demonstrative proof, such as actual antagonistic conduct or animus against the employee. . . ."). The pattern of antagonism alleged by Plaintiffs refers to conduct prior to Plaintiffs filing of the lawsuit against Joseph Cellurale, Jr. on October 8, 2009. Such a pattern of antagonism might demonstrate that the County Defendants acted out of general animosity towards Plaintiffs, but cannot establish a causal link between the filing of the lawsuit and the alleged retaliatory conduct. Thus, Plaintiffs' First Amendment retaliation claim against the

County Defendants should be dismissed for failure to state a claim.

## E. First Amendment Retaliation Claim Against Defendants Airport Authority and Shallenberger

### 1. Statute of Limitations

Defendants Airport Authority and Shallenberger assert that Plaintiffs are attempting to assert a "disguised" continuing violations theory to "revive" their time-barred action based on Plaintiff Terry Kriss's 2008 eviction from the Airport. *See* Airport Auth. Reply at 1–3 (Doc. 41); Shallenberger Reply at 1–3 (Doc. 42). Contrary to Defendants Airport Authority and Shallenberger's assertions, Plaintiffs concede that any First Amendment retaliation claim based on the 2008 eviction is barred by the two-year statute of limitations and instead assert that the May 19, 2009 rejection of a new lease proposal is an independently actionable event.[5] Pls.' Response to Airport Authority at 3 (Doc. 33); Pls.' Response to Shallenberger at 3 (Doc. 35). Even if Plaintiffs were asserting a continuing violation, a finding of no continuing violation would simply mean any action based on conduct prior to the two-year limitations period would be time-barred. It would not mean actions based on future conduct also are time-barred. *See Cowell*, 263 F.3d at 292 (explaining that continuing violations doctrine allows recovery for past conduct that would otherwise be time-barred).

Thus, Plaintiffs' First Amendment retaliation claims against Defendants Airport Authority and Shallenberger should be dismissed as barred by the statute of limitations, only to the extent the claims are based upon alleged retaliatory conduct prior to January 18, 2009.

### 2. Plaintiffs Have Not Pled Sufficient Facts To Make a Plausible First Amendment Retaliation Claim

Defendant Shallenberger argues that Plaintiffs have failed to state a claim because (1) the alleged protected activity occurred after the alleged retaliatory conduct; (2) Plaintiffs have not alleged that Defendant Shallenberger knew or should have known Ms. Chomiak's allegations against Plaintiff Terry Kriss were false; and (3) Defendant Shallenberger's single vote on the Airport Authority Board did not result in eviction. The undersigned agrees that Plaintiffs have failed to state a claim, but not for the reasons asserted by Defendant Shallenberger.

With respect to Defendant Shallenberger's first argument regarding the timing of the alleged protected activity and the alleged retaliatory conduct, Defendant Shallenberger apparently misunderstands Plaintiffs' First Amendment retaliation claim against him. Plaintiffs' theory is that they engaged in the protected activity of filing various zoning actions against the Cellurales from 1995 through 2008, and that Defendant Shallenberger retaliated against them in 2008 by moving to evict Plaintiff Terry Kriss from the Airport and publicly discussing an allegedly private matter. *See* Compl. at ¶¶ 415–420. Contrary to Defendant Shallenberger's assertions, the alleged protected activity occurred before the alleged retaliatory action.

With respect to Defendant Shallenberger's second argument, Defendant Shallenberger asserts that "absent allegations that he acted on information knowing the same to be falsified, it is impossible to discern from the Complaint that his ac-

---

**5.** Likewise, Plaintiffs concede that any claim based on Defendant Shallenberger's alleged retaliation by "publically discussing ... pri-vate, unproven allegations" during the 2008 eviction hearing is time barred. Pls.' Response to Shallenberger at 7 (Doc. 35).

tions in bringing the leasehold to its end failed to conform to any constitutional obligation he owed to the lessees." Shallenberger Br. at 10 (Doc. 27). At the pleading stage, Plaintiffs need only plead "a causal link between the constitutionally protected conduct and the retaliatory action." *Thomas,* 463 F.3d at 296. Plaintiffs' tenuous causation theory will be even more tenuous if Defendant Shallenberger did not know that Ms. Chomiak's allegations were false, but Plaintiffs need not disprove alternative explanations for Defendant Shallenberger's conduct at the pleading stage.[6]

With respect to Defendant Shallenberger's third argument that Defendant Shallenberger's single vote could not have resulted in eviction, Plaintiffs argue that the alleged retaliatory motive of Defendant Shallenberger creates a reasonable inference that the Airport Authority Board as a whole also acted with retaliatory motive. Plaintiffs rely on *DeBlasio,* 53 F.3d at 601–02, and *Sameric Corp. of Delaware, Inc. v. City of Philadelphia,* 142 F.3d 582, 593 (3d Cir.1998). Although Defendant Shallenberger did not address those cases, those cases may be distinguishable. Plaintiffs' lack of factual allegations suggesting that Defendant Shallenberger improperly influenced any other Board member should give the Court some pause, but because the Court should dismiss Plaintiffs' claim based on a more fundamental shortfall, the

Court need not delve into whether Plaintiffs' allegations are sufficient.

█ Plaintiffs' more fundamental problem is that Plaintiffs do not allege any involvement of Defendant Shallenberger in the rejection of the 2009 lease proposal. *See* Compl. at ¶¶ 247–50. As previously discussed, Plaintiffs' First Amendment retaliation claims against Defendants Airport Authority and Shallenberger are time-barred except for a claim based on the alleged rejection of Plaintiffs' 2009 lease proposal. Because Plaintiffs have not alleged any involvement of Defendant Shallenberger in the 2009 rejection of Plaintiffs' lease proposal, Plaintiffs also have not alleged any facts to support the inference that the Airport Authority Board had a retaliatory motive in rejecting the lease proposal. Thus, Plaintiffs' First Amendment claims against Defendants Airport Authority and Shallenberger should be dismissed.[7]

### F. *Additional Arguments*

Because all of Plaintiffs' claims should be dismissed for the reasons stated above, the Court need not address the additional arguments raised by Defendants.

### *CONCLUSION*

For all of the reasons stated above, it is respectfully recommended that Defendants Fayette County, Sara Rosiek, Vincent Vicites, and Vincent Zapotosky's Motion to

---

6. Defendant Shallenberger does not raise any challenges to Plaintiffs' causation theory, except for asserting that Defendant Shallenberger did not know that Ms. Chomiak's allegations were false and that Defendant Shallenberger's single vote could not have caused Plaintiff Terry Kriss's eviction.

7. Should Plaintiffs amend their complaint to allege involvement of Defendant Shallenberger in the 2009 rejection of Plaintiffs' lease proposal, Plaintiffs should be cautioned that they would be wise to provide factual support for the causal link or face another motion to

dismiss from Defendant Shallenberger. In addition to the lack of factual allegations that Defendant Shallenberger influenced other Board members in voting to reject the lease proposal, Plaintiffs' current theory of causation linking Plaintiffs' zoning actions to Defendant Shallenberger's motion to evict is very thin. Any theory of causation extending the link to the later rejection of the lease proposal will be even more thin. Further, it is unclear if Plaintiffs could recover any damages attributable to the rejection of the lease proposal.

Dismiss (Doc. 24) should be granted, that Defendant Terry Shallenberger's Motion to Dismiss (Doc. 26) should be granted, and that Defendant Fayette County Airport Authority's Motion to Dismiss (Doc. 28) should be granted. Because amendment of time-barred claims would be futile, Plaintiffs' claims should be dismissed with prejudice to the extent they are based on alleged unconstitutional conduct prior to January 18, 2009. Because Plaintiffs' substantive due process claim is not based upon a protected property interest, amendment to the substantive due process claim also would be futile. Thus, Plaintiffs' substantive due process claim also should be dismissed with prejudice. Plaintiffs' other claims should be dismissed without prejudice.

In accordance with the Magistrates Act, 20 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.D.2 of the Local Rules for Magistrates, objections to this Report and Recommendation must be filed by July 5, 2011. Failure to file objections will waive the right to appeal. *Brightwell v. Lehman*, 637 F.3d 187, 193 n. 7 (3d Cir.2011). Responses to objections are due by July 22, 2011.